92 F.3d 1187
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur D. ASHBY, Defendant-Appellant.
 No. 96-1126.
 United States Court of Appeals, Seventh Circuit.
 Argued July 9, 1996.
Decided July 22, 1996.
Rehearing Denied Sept. 9, 1996.
 
 Before CUMMINGS, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 On July 7, 1991, a fire destroyed Arthur Ashby's place of business. An investigation revealed that the fire had been set deliberately. Ashby had insurance to cover the loss of his business. On September 23, 1994, Ashby was indicted for various offenses in connection with the fire, including three counts of mail fraud, one count of use of fire to commit a felony, and one count of malicious damage by fire of a building used in interstate commerce. A jury convicted Ashby on all five counts. Ashby moved for a judgment of acquittal on the ground that the government presented insufficient evidence to prove that he caused the fire. The district court denied Ashby's motion and sentenced him to a total term of imprisonment of 70 months. Ashby appeals, again challenging the sufficiency of the evidence to convict him. We affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 In the mid to late eighties, Arthur Ashby operated a successful hobby shop and hobby distributorship in Chesterton, Indiana. In 1987, Ashby took out insurance against any interruption to his business or any property damage to the real estate or inventory.
 
 
 3
 In 1989, Ashby took out a $500,000 Small Business Administration loan from the First State Bank of Porter. With the proceeds from the loan, Ashby built a brand new building at 418 Roberts Road in Chesterton to house his hobby shop and, in an adjacent warehouse, his hobby distributorship. Both Chesterton State Bank and First Bank of Porter required Ashby to personally guarantee his loans. Ashby was made aware that, if he failed to make good on his debts, his personal assets could be subject to seizure by the banks.
 
 
 4
 Unfortunately for Ashby, at about the time that he borrowed money to construct the new building, his business began to decline. Although the hobby shop was profitable, his other hobby ventures were doing poorly. Ashby sustained his business by borrowing more money from Chesterton State Bank. Nevertheless, sales continued to decline. The banks became restive as Ashby's debt payments became increasingly sporadic. By the end of 1990, Chesterton State Bank refused to loan Ashby any more money. In January 1991, Ashby did not pay his debt service obligations to either bank. The banks began to pressure Ashby to find a solution to his financial woes. However, two possible courses of action, selling the business or selling the inventory, were not attractive options to Ashby because he was personally responsible for any shortfall between the sale proceeds and what he owed the banks.
 
 
 5
 In the spring of 1991, Ashby removed a valuable antique race car from the warehouse. In June 1991, First State Bank of Porter demanded that Ashby produce a written business plan by July 8, 1991. At about the same time, Ashby contacted a leasing agent about renting space for his still profitable hobby shop business.
 
 
 6
 On Sunday July 7, 1991, Ashby's business burned down. The investigators concluded that the fire was intentional. According to the investigators, there were two points of origin. They determined that the fire had started at approximately 3:45 p.m. The investigators were unable to identify a source of ignition for the fires. At trial, the government produced no evidence of any sort of delay-timing or fusing as the source of ignition.
 
 
 7
 Ashby told investigators that he and his wife had stopped by the business at about 12:30 p.m. on the day of the fire to pick up hobby shop receipts from the day before. Ashby stated that after entering the hobby shop he turned off the alarm for the store. Once they had collected the receipts, Ashby reactivated the hobby shop alarm, and he and his wife headed into the warehouse.
 
 
 8
 To enter the warehouse, Ashby had to deactivate the warehouse alarm, which used infrared motion detectors. The system was capable of detecting radiant heat, including fire, a fact Ashby was aware of. When they left the warehouse, Ashby did not reset the alarm. According to Ashby, resetting the alarm was unnecessary because it was daylight. Tr. 899.
 
 
 9
 Ashby and his wife left the warehouse at about 1 p.m. Ashby's daughter was attending a birthday party and his wife decided to take a nap. Ashby recalled that he lay down in front of the television set and fell asleep, but awoke at 3 p.m. and left the house shortly thereafter. Tr. 709. Before leaving, he told his wife that he was going to visit a friend's house. After the fire, he told investigating agents that he went to visit an antique store in Michigan City, Indiana. He also stated that he saw no one on his way to the antique store and that no one saw him; that the antique store was closed when he got there; and that no one saw him on his return trip home. Ashby arrived at a neighbor's house at 5 p.m. to pick up his daughter. From approximately 3 p.m. to 5 p.m., there is no evidence documenting Ashby's whereabouts.
 
 II. ANALYSIS
 
 10
 Ashby does not dispute that arson was the cause of the fire that burned down his building. Instead, Ashby maintains that there was insufficient evidence to convict him of causing the fire. Ashby presents a simple argument. He first notes that the government presented no evidence that he was at the warehouse when the fire started. He then points out that the government also failed to produce any evidence that the fire was started by a delay-timing device. Based on this lack of evidence, Ashby contends that no rational trier of fact could conclude beyond a reasonable doubt that it was he who caused the fire. The government responds by pointing out that it may prove Ashby's guilt by circumstantial evidence alone, and that in this case, the evidence demonstrated that Ashby had abundant motive and opportunity to cause the fire.
 
 
 11
 The question on appeal is whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Thoedosopoulos, 48 F.3d 1438, 1449 (7th Cir.1995) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). As the government points out, the conviction may be based solely on circumstantial evidence. United States v. Kamel, 965 F.2d 484, 488 (7th Cir.1992). In addition, on appeal, this court must view all the evidence in the light most favorable to the government. United States v. Zarnes, 33 F.3d 1454, 1465 (7th Cir.1994), cert. denied, 115 S.Ct. 2286 (1995).
 
 
 12
 Viewing the evidence in the light most favorable to the government, it is clear that Ashby had an ample motive for setting the fire. His business was in poor financial shape. His hobby distributorship had been in decline for over a year. He was unable to make his payments to the banks, and they had begun clamoring for some sort of drastic solution to the problem (such as selling the business). Ashby would have been accountable personally for any shortfall between the sale proceeds and the debt he owed. On the other hand, if the warehouse burned down, he would be able to wipe out what he owed to the banks and save his personal assets. Ashby clearly had a motive to commit arson.
 
 
 13
 In addition, Ashby had the opportunity to burn down the warehouse. Telling his wife that he was going to see a friend, he left his house at about 3 p.m. The warehouse was only 10 minutes away from Ashby's house. The fire started at about 3:45 p.m. No one saw Ashby from 3 p.m. to 5 p.m. Of course, Ashby claims that he went to an antique shop in Michigan City during that time, but his alibi is somewhat questionable. Although a trip to the antique shop would have taken him out on the roads, he claims he saw no one and no one saw him. And though the round trip could have been done in less than one hour, he claims to have taken back roads on the return trip, thus explaining his two-hour absence. Moreover, Ashby told his wife that he was going to visit a friend's house and only later told investigators that he went to the antique shop. The jury had reason to doubt Ashby's alibi.
 
 
 14
 The government also presented evidence tending to show that Ashby knew something was going to happen to the building. First, several months before the fire, Ashby removed a valuable antique race car from the warehouse. Because the car was the Ashbys' personal property, it was not covered by the insurance policy on the business. Second, two weeks before the fire, Ashby began looking for a place to rent for his hobby shop, even though he had constructed a whole new building for his business the previous year.
 
 
 15
 Finally, Ashby failed to reset the infrared warehouse alarm, which he knew could detect fire. He explained this to an investigator by saying that it was not necessary to set the alarm during the day. However, this explanation appears inconsistent with the fact that he reset the alarm on the adjoining hobby shop that same afternoon. Given Ashby's motive and opportunity, as well as the other circumstantial evidence noted above, there was sufficient evidence from which a trier of fact could reasonably conclude that Ashby started the fire.
 
 
 16
 The government presented sufficient circumstantial evidence that Ashby caused the fire in order for the jury to convict him. The judgment of the district court is AFFIRMED.